UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

AUTISM INTERVENTION SPECIALISTS, LLC,

Plaintiff-Appellant,

v.

NASSIM AOUDE,

Defendant-Appellee.

CIVIL ACTION NO. 22-40042-WGY

YOUNG, D.J. September 19, 2023

**MEMORANDUM AND ORDER**

## I. INTRODUCTION

In 2019, Appellant Autism Intervention Specialists ("AIS") commenced a proceeding in the United States Bankruptcy Court for the District of Massachusetts to prevent Appellee Nassim Aoude ("Mr. Aoude") from being discharged from his obligation to indemnify AIS for costs incurred in another litigation (the "Robinson Lawsuit"). AIS argued that Mr. Aoude's indemnification obligation is nondischargeable because it resulted from a fraud Mr. Aoude perpetrated against AIS. The Bankruptcy Court rejected AIS's request, granting summary judgment in favor of Mr. Aoude. The Bankruptcy Court held that, even assuming a fraud had occurred, AIS's case failed on the pleadings because AIS had not shown that the fraud was the "but

for" cause or the legal cause of AIS's alleged damages. The Bankruptcy Court also held that Mr. Aoude's reaffirmation of his indemnification obligation in a subsequent settlement agreement did not alter the dischargeable nature of that obligation.

In its appeal, AIS essentially re-argues the same ground it has already covered in the Bankruptcy Court. Despite AIS's protestations, the Bankruptcy Court correctly established that Mr. Aoude's alleged fraud was not the "but for" or the legal cause of AIS's damages. Moreover, the settlement agreement did not alter the dischargeable nature of Mr. Aoude's indemnification obligation. Therefore, the Bankruptcy Court's decision is **AFFIRMED.**

## II. PROCEDURAL HISTORY

Mr. Aoude filed for Chapter 7 bankruptcy in March 2019. Mem. of Decision on Def.'s Moti. for Sum. J. ("Bankruptcy Court Decision"), ECF 6, 6 (from page 24 of ECF 6 onwards).

In July 2019, AIS filed a complaint in Bankruptcy Court seeking denial of discharge of any debt arising out of Mr. Aoude's obligation to indemnify AIS in connection with the Robinson Lawsuit, pursuant to sections 523(a)(2)(A) and 523(a)(4) of the Bankruptcy Code. Id. 7. In March 2020, Mr. Aoude filed a motion for Summary Judgment, and in February 2022, the Bankruptcy Court denied Mr. Aoude's motion. Id. 18. On the same occasion, however, the Bankruptcy Court invited the parties

to file supplemental arguments addressing issues raised by the Bankruptcy Court sua sponte. Id. According to the Bankruptcy Court, these issues supported the granting of summary judgment in favor of Mr. Aoude for both AIS's 11 U.S.C. § 523(a)(2)(A) and section 523(a)(4) claims, which the judge treated as one.[1] Id. 10-11, 10-18.

After the parties filed their supplemental memoranda, the Bankruptcy Court issued a Supplemental Memorandum of Decision granting Mr. Aoude's Motion for Summary Judgment. Mem. of Decision and Order Granting Summ. J. ("Bankruptcy Court Supplemental Decision"), ECF 6, 3 (from page 42 of ECF 6 onwards). The Bankruptcy Court's decision primarily rested on three grounds. First, AIS had failed to establish that Mr. Aoude's alleged fraud was the "but for" cause of AIS's damages because: (1) AIS did not suffer any harm as a result of Mr. Aoude's misrepresentations because the alleged fraud put AIS in a better position vis-a-vis the Robinson Lawsuit, and, in any case, (2) Mr. Aoude could not have defrauded AIS because, at the time the supposed fraud occurred, Mr. Aoude was the sole corporate officer of AIS and therefore, his knowledge of the fraud was attributed to AIS. Id. at 1-3. Second, the

[1] At oral arguments, AIS conceded that its section 523(a)(4) claim was "duplicative" of its 11 U.S.C. § 523(a)(2)(A) claim, and that it "did not distinguish between the two theories in [its] briefings." Appeal Hearing Transcript 4-5.

Bankruptcy Court opined that any harm AIS might have suffered was not the "reasonably foreseeable" consequence of Mr. Aoude's misrepresentations. Bankruptcy Court Decision 14-18. Finally, the Bankruptcy Court determined that the settlement agreement did not alter the nondischargeable nature of Mr. Aoude's indemnification obligation. Bankruptcy Court Supplemental Decision 3.

AIS then filed this appeal. Br. of Appellant AIS ("Appellant's Br."), ECF 6. The parties have properly briefed the issue. Br. of Mr. Aoude Appellee ("Appellee's Br."), ECF 8; Reply of Appellant AIS ("Appellant's Reply").

Judge Woodlock heard oral arguments on February 15, 2023. ECF 11. Pursuant to Local Rule 40.1(i)(1), this case was reassigned to this Session on June 8, 2023. ECF 13-14. I have carefully reviewed the entire record including the draft transcript of the hearing in the Bankruptcy Court before preparing this opinion.

**III. FACTS ALLEGED**

The factual background of this case dates back to 2012 when a suit was brought against Mr. Nassim Aoude and his business, Autism Intervention Specialists ("AIS"), by Behavioral Concepts, Inc. and Jeffrey Robinson (the "Robinson lawsuit"). Bankruptcy Court Decision 3. Mr. Aoude is a Licensed Applied Behavioral Analyst who, at the time of the Robinson lawsuit, was the sole

member and manager of AIS. Id. 2. The plaintiffs in the Robinson lawsuit alleged Mr. Aoude and AIS committed defamation, tortious interference with advantageous and prospective business relations, and violated the Massachusetts Unfair and Deceptive Trade Practices Act (M.G.L. c. 93A, § 11). Appellant Br. 6-7. The Robinson litigation continues to this day.

In October of 2013, Mr. Aoude and PCF Opco Holdings, LLC and Pacific Child, Family Associates, LLC (together referred to as "PCFA") agreed that Mr. Aoude would sell his 100% membership interest in AIS to PCFA for $4,500,000 and the parties executed this transaction through an Equity Interest Purchase Agreement (the "Purchase Agreement"). Bankruptcy Court Decision 2. This Purchase Agreement contained two provisions that are of interest in the present case: (1) a non-compete clause in which Mr. Aoude agreed not to hire AIS employees in any new business ventures and not to provide outside autism services to more than fifteen individual patients (the "non-compete clause"), and (2) a defense and indemnification clause whereby Mr. Aoude promised to reimburse AIS for any costs incurred by AIS in connection with the Robinson lawsuit (the "indemnification clause"). Id. 3.

AIS alleges, however, that Mr. Aoude quickly violated the non-compete clause. Appellant Br. 2-3. On October 22, 2013, four days after the closing of the Purchase Agreement, articles of organization were filed in Massachusetts for a new entity,

Autism Behavioral Services ("ABS"), listing Mr. Aoude's father, Mr. Salim Aoude, who had no experience in the autism services industry, as the holder of all corporate offices. Id. There was soon a website for ABS promoting Mr. Nassim Aoude as CEO and "Founder" of the organization. Id. The website advertised, "ABS offers a comprehensive array of services . . . specifically targeting deficits that impact individuals with autism." Id. In August 2014, articles of incorporation were filed in the name of Aoude's cousin, Mr. George Torbay, for another autism services business -- Autism Behavior Center, Inc. ("ABC") -- describing the organization as "AT HOME SUPPORT SERVICES FOR AUTISIC PERSONS." Id. 5. AIS further claims that Mr. Aoude hired former AIS employees to staff ABS and ABC, and that at least 20 children were observed being treated at ABS in August 2015, in violation of the non-compete clause. Id.

By October 2015, Mr. Aoude and PCFA had filed suit and counterclaim against one other in the Supreme Court of New York both alleging fraud and breach of the Purchase Agreement. Bankruptcy Court Decision 3-4. PCFA and AIS also filed a separate suit in the Massachusetts Superior Court sitting in and for the County Worcester against ABS, Mr. Salim Aoude, Mr. Torbay, and a business entity owned by Mr. Torbay, alleging that these Defendants had provided a means by which Mr. Nassim Aoude was permitted to compete against PCFA and AIS. Id.

In March 2016, the two lawsuits were resolved through a settlement agreement (the "Settlement Agreement"). Id. 5. Among other provisions, the Settlement Agreement provided that (1) the Aoude litigants would pay $1,000,000 to PCFA and (2) the Mr. Aoude would continue his defense and indemnification in the Robinson Lawsuit. Id.

Approximately two years later, in 2018, Mr. Aoude stopped defending the Robinson lawsuit, claiming he was no longer financially able to pay for the litigation. Id. 5-6. This decision came as Blue Cross Blue Shield, the primary insurance company providing insurance coverage for over 80% of ABS clients, stopped paying for its services. Id. Shortly thereafter, Mr. Aoude filed a petition for relief under Chapter 7 of the Bankruptcy Code in March 2019. Id. 6.

## IV. ANALYSIS

AIS asks this Court to scrutinize three holdings of the Bankruptcy Court, namely that AIS failed to show (1) cause in fact, (2) legal causation, and (3) that the Settlement Agreement created a nondischargeable obligation to defend and indemnify AIS. Appellant Br. 1-2. As articulated in greater detail below, this Court agrees with all three holdings by the Bankruptcy Court, and, therefore, rejects this appeal.

### A. Standard of Review

This Court reviews the Bankruptcy Court's entry of summary

judgment de novo. Sharfarz v. Goguen, 691 F.3d 62, 68 (1st Cir. 2012). The Bankruptcy Judge's rulings on issues of fact are afforded clear-error review while issues of law receive de novo review. Id. (citing, In re Bank of New Eng. Corp., 364 F.3d 355, 361 (1st Cir. 2004) and In re Werthen, 329 F.3d 269, 272 (1st Cir. 2003)). In this case, much of the Court's analysis will focus the Bankruptcy Judge's factual findings related to causation, which are reviewed for clear error. Id. On the other hand, the Bankruptcy Court's legal rulings concerning the attributability of Mr. Aoude's knowledge to AIS will be reviewed de novo. Id. (citing Clement v. United States, 980 F.2d 48, 53 (1st Cir. 1992)).

**B. The Bankruptcy Court Correctly Held That Mr. Aoude's Alleged Fraud Was Not the "But For" Cause of AIS's Damages**

In order to establish that a debt is nondischargeable because it was obtained by fraud, the creditor must show that: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth, (2) the debtor intended to deceive, (3) the debtor intended to induce the creditor to rely upon the false statement, (4) the creditor actually relied upon the misrepresentation, (5) the creditor's reliance was justifiable, and (6) the reliance upon the false statement caused damage. Palmacci v. Umpierrez, 121 F.3d 781, 786 (1st Cir. 1997). This present case hinges on the causation prong of

the Palmacci test.

The First Circuit has noted that "because one of the Bankruptcy Code's chief aims is to give the deserving debtor a 'fresh start,' we read exceptions to dischargeability 'narrowly." In re Goguen, 691 F.3d 62, 68 (1st Cir. 2012) (citing McCory v. Spigel, 260 F.3d 32 (1st Cir. 2001). Moreover, the language of section 523(a)(2)(A) does not "remotely suggest that nondischargeability attaches to any claim other than one which arises as a direct result of the debtor's misrepresentations or malice." Id. 32 (citing Century 21 Balfour Real Estate, 16 F.3d 7, 10 (1st Cir. 1994)). As a result, courts have interpreted the causality requirement of section 523(a)(2)(A) strictly as "expressly limit[ing] the exception to discharge to the extent that [the debt] was actually obtained by the fraudulent conduct." Id. (quoting Muleshoe State Bank v. Black, 77 B.R. 91, 92 (N. D. Texas 1987). The First Circuit has also ruled that the plaintiff seeking to prevent a debt from being discharged bears the burden of showing the debt comes within the scope of section 523(a)(2)(A). Spigel, 260 F.3d 32, at 32. In sum, in order to succeed, AIS must show that the harm it alleges "directly" resulted from Mr. Aoude's fraud. See Grogan v. Garner, 498 U.S. 281, 287-288 (1991).

AIS cannot make that showing. AIS's core argument on

appeal is that Mr. Aoude's fraud caused Mr. Aoude to assume the obligation to indemnify AIS, and therefore, that indemnification obligation is non-dischargeable because it is the result of fraud. Appellant's Br. 17; Appellant's Reply 9. The occurrence of fraud, however, is only the first link of the logical chain AIS must prove. What AIS must show here is that the fraud resulted in the damages AIS alleges it suffered. Therefore, the essential question in this case is this: did Mr. Aoude's assumption of the indemnification obligation cause damage to AIS? The obvious answer is: of course not, as the Bankruptcy Judge correctly noted. Mr. Aoude's assumption of the indemnification obligation benefitted AIS, rather than damaging it because it made Mr. Aoude personally liable for the debts incurred by AIS in connection with the Robinson Litigation. Before the fraud, Mr. Aoude had no obligation to indemnify AIS given AIS's separate legal personality. In other words, Mr. Aoude's fraud placed AIS "in a better position as to the [Robinson] Litigation" by leading Mr. Aoude to assume an indemnification obligation to the benefit of AIS. Bankruptcy Court Decision 15 (emphasis omitted). Therefore, Mr. Aoude's alleged fraud is not the "but for" cause of AIS's damages.

The same point can be made by looking at the causation chain from a reverse temporal perspective. The last element of the causal chain AIS must prove to succeed is the emergence of a

liability, which resulted from the fraud. Here, AIS argues that the liability resulting from the fraud is that AIS is now left alone to bear its litigation costs and a potentially unfavorable judgment in the Robinson Litigation. Accordingly, the relevant question is: did the fact that AIS is left alone to bear its litigation costs in the Robinson Litigation result from the fraud? Again, the answer is no. Before the alleged fraud occurred, did AIS have the possibility to rely on Mr. Aoude to pay its ligation costs? No, it did not. AIS is a legal entity separate from Mr. Aoude, who has no default personally obligation to indemnify an LLC of which he is an employee. If the liabilities AIS complains about -- having to bear its own litigation costs and the risk of an unfavorable judgment -- existed before the fraud, the fraud cannot be the "but for" cause for the emergence of such liabilities.

To get around this issue, AIS attempts to draw a causal link between the fraud and the damages through a different medium than Mr. Aoude's assumption of the indemnification obligation. Specifically, AIS argues that the fraud caused it damage because (1) it "compromised Aoude's ability to defend himself and AIS in the [Robinson] litigation," and (2) made "Aoude vulnerable to areas of cross-examination" in that litigation. These arguments fail at the outset because AIS has not provided any evidence that would allow it to meet its burden

of proof.

As to AIS's first argument, there is no evidence in the record that Mr. Aoude became financially insolvent and thus incapable of defending himself and AIS because of the fraud. Nor has AIS articulated on appeal any reason why Mr. Aoude's financial distress stemmed from the fraud. In fact, as the Bankruptcy Judge held, "Mr. Aoude's financial difficulties followed from the closure of Mr. Aoude's new practice due to a billing dispute with the insurer for the bulk of his patients." Bankruptcy Court Decision 17. AIS has not offered any reason to reject this factual finding, which is subject to a clear error review. Therefore, AIS has not met its burden to show a causal connection between the fraud and Mr. Aoude's financial inability to defend AIS in the Robinson litigation, as the Bankruptcy Judge correctly held.

As to the second argument, AIS has not even begun to quantify the extent to which Mr. Aoude's supposed "vulnerabl[ity] to areas of cross-examination" has caused AIS to incur any debt. Having failed to show "the extent that [the debt] was actually obtained by the fraudulent conduct," AIS "but for" causation argument fails. Id. 33 (quoting Muleshoe State Bank v. Black, 77 B.R. 91, 92 (N. D. Texas 1987). Therefore, AIS has failed to establish why the Bankruptcy Court's decision on causation is incorrect.

The Bankruptcy Judge gave an additional reason why "but for" causation was not present. This analysis, however, which does not withstand scrutiny. According to the Bankruptcy Court, "AIS was controlled by Mr. Aoude at the time of the underlying transaction – the Purchase Agreement – and thus AIS could not have been defrauded by Mr. Aoude at that time since his knowledge is imputed to AIS." Bankruptcy Court Supplemental Decision 3. The Bankruptcy Court's decision to impute Mr. Aoude's knowledge of the fraud to AIS is inconsistent with the applicable law. State law governs whether corporate officers' knowledge is imputed to the corporate principal entity. O'Melveny & Myers v. F.D.I.C., 512 U.S. 79 (1994). Under Massachusetts law "an agent's knowledge of his own unauthorized acts is not imputed to the principal when the agent has acted fraudulently toward his principal." National Credit Union Administration v. Ticor Title Insurance Company, 873 F.Supp. 718, 726 (D. Mass. 1995) (Saris, J.) (citing Sperry Rand Corp. v. Hill, 356 F.2d 181, 726 (1st Cir. 1966)). Although incorrect, the Bankruptcy Court's decision to impute Mr. Aoude's knowledge of the fraud to AIS was merely a secondary argument in support of the overarching conclusion that causation is missing. Therefore, it does not affect the Bankruptcy Court's ultimate judgment, which rests on independent and solid grounds.

### C. The Bankruptcy Court Correctly Held That Mr. Aoude's Alleged Fraud Was Not the Legal Cause of AIS's Damages

Moreover, the Bankruptcy Judge correctly determined in dicta that AIS failed to meet the "legal" cause prong because the alleged damages are not a "reasonably foreseeable" consequence of Mr. Aoude's alleged fraud. Bankruptcy Court Decision 16-17.

As the Bankruptcy Judge aptly noted, legal causation focuses on foreseeability. Id. 16. The Restatement (Second) of Torts § 548A provides that "[i]n general, a misrepresentation is a legal cause only of those pecuniary losses that are within the foreseeable risk of harm that it creates. . . . Pecuniary losses that could not reasonably be expected to result from the misrepresentation are, in general, not legally caused by it and are beyond the scope of the maker's liability." Id. (citing Restatement (Second) of Torts §548A). In short, the question is whether the fact that AIS must bear its own litigation costs and the risk of an unfavorable judgment was the "reasonably foreseeable" outcome of Mr. Aoude's allegedly fraudulent engagement in competitive acts with AIS.

The Bankruptcy Judge held -- and this Court agrees -- that the alleged harm was not the "reasonably foreseeable" consequence of Mr. Aoude's alleged fraud. Id. 17. At the time of the execution of the Purchase Agreements, it was a known risk

that Mr. Aoude might have become insolvent and thus incapable of indemnifying AIS for its litigation costs. Id. This risk existed regardless of the fraud. Id. Nor did the fraud foreseeably increase the likelihood that that risk manifested. Id. One might reasonably foresee that violating a non-compete clause could cause damage, such as "losses due to any actual competition and diversion of services that should have been provided by Mr. Aoude through AIS." Id. It would be, however, quite surprising that one's decision fraudulently to engage in competition would result in that one's inability to pay for litigation costs in an unrelated litigation. Of course, this is unless that fraud was the cause of the insolvency. Yet, as seen before, AIS has not even begun to show that Mr. Aoude's fraud was the cause of Mr. Aoude's insolvency, a fact that is contradicted by the record. As the Bankruptcy Judge correctly concluded, "AIS does not assert, nor does the summary judgment record readily suggest, that Mr. Aoude's allegedly false promise not to compete foreseeably increased the risk that he would not or could not defend and indemnify AIS in the [Robinson lawsuit]." Id.

**D. The Bankruptcy Court Correctly Held That the Settlement Agreement Did Not Create a Nondischargeable Obligation to Defend and Indemnify AIS**

Finally, Mr. Aoude's reaffirmation of its dischargeable obligation to indemnify AIS in the Settlement Agreement did not

change the nature of that obligation to make it nondischargeable.

AIS asserts that because the Settlement Agreement ending the New York and Worcester lawsuits arose out of "fraud-based litigation claims," Mr. Aoude's reaffirmation to continue to indemnify AIS and defend the Robinson lawsuit created a nondischargeable obligation toward AIS. Appellant's Br. 13-14. AIS cites Archer v. Warner, 538 U.S. 314 (2003) to support its argument that "reducing a fraud-based litigation claim to a settlement agreement does not change the nature of the debt for nondischargeability purposes from fraud-based to contract-based." Id. (citing Archer V. Warner, 538 U.S. at 320). This Courts fully agrees that Archer resolves the issue at stake here. It does so, however, contrary to the argument of AIS. The Settlement Agreement never transformed Mr. Aoude's dischargeable obligation to indemnify AIS into a nondischargeable obligation precisely because "a settlement agreement does not change the nature of the debt for nondischargeability purposes." Id. Or as the Bankruptcy Court aptly held, the Settlement Agreement "did not create nondischargeable obligations to AIS where none existed prior to the settlement." Bankruptcy Court Supplemental Decision 3.

## V. CONCLUSION

For all the above reasons, this Court **AFFIRMS** the Bankruptcy Court Decision.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[2]

[2] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 45 years.